Number 1-813-96 United States v. William Gaudet May it please the Court, my name is Peter Sear, I represent Appellant William Gaudet. Chief Judge Howard, may I please reserve four minutes for rebuttal? Yes. Thank you, Judge. This case, the principle push with respect to this appeal deals with Rules 413, 414, 404, and 403 of the Federal Rules of Evidence. There are two reasons why, in particular, the testimony of Jennie G. should have been excluded and defendant's motion eliminated. First, which was well preserved in the lower court, is that the charges, Mr. assault or sexual molestation, and the second charge was that he transported a minor with the intent. So there is no, it is a specific intent crime. The government is not charging that he did those things, only that he traveled with the intent to do those things. Both in Rule 413 and Rule 414 allow for the evidence with respect to Jennie G. or frankly the past acts with respect to T.G. if the crime charged is an assault or sexual molestation. We are suggesting to you that although the district court judge in his order, he turned it, he did not summarily just make that conclusion, but essentially said, very quickly I conclude that the government has charged Mr. Gaudet with a sexual assault or sexual molestation, without really any further reasoning or details. That in and of itself I would suggest bars the application of 413 and 414 in this particular case. I just didn't see you making that argument in your brief It is not made very clearly. I do place that argument in the statement of facts, and when I am recalling our arguments essentially of what we had made to the district court judge, I go through and I indicate that this is the government had produced their motion and we did our response and then at the same time I am not prepared at this time to waive that argument after careful review and preparation frankly of this oral argument. It seems that that argument needs to be preserved to the best that I can preserve it. Because as I read it, under the summary of argument when you are dealing with this issue, you are just making the argument that under 403 it should be excluded. I don't see a separate contention that, and you make an argument, a developed argument why 403 applies even to those things that fall within 413 and 414. But I don't see a separate argument here that 413 and 414 can't apply because of those provisions text, which I understand the argument and they have force. I just don't see it. And that is, the best I can do today judge is to press that and to ask the court and to suggest that I have not waived that. Because it simply seems to me to be, to have some force with respect to, especially considering that there is really no, it just seems plain. If you are right on that, then we get to what, just 404? Correct judge. And 404 essentially is that this propensity evidence doesn't come in unless it goes to motive, intent. But why wouldn't it? Judge, so in that particular case, we are talking about the older daughter, Jenny G, conduct that had taken place several years before the alleged conduct in 2010 where Mr. Godhead is both picking up the kids from the scene and also traveling to Pennsylvania. So there is a difference in time. I would suggest that There is not a substantial difference in MO in terms of the complaints by both daughters with neither of them according to the record having communicated with one another the allegations about the abuse. That is correct judge. The facts do suggest that the MO or the method of operation is similar. And I would suggest that the argument that one of those exceptions may not apply is a tough one for Mr. Godhead to make in this particular case. However, he is pressing that argument and even if under 404 it does come in for intent or MO, I would suggest then go to the 403 analysis where our position is that the danger of unfair prejudice substantially outweighs the relevant aspect of that evidence. And I would point specifically to the testimony. But how can that be when your client's position is that none of this happened? So if the evidence were excluded, it would be one person's word against the other. So why isn't that highly probative that this established an MO from before and it is reasonable to assume that it happened again? Well, it seems to me that he is suggesting that none of this happened. That has been his position and he still to this day stands by that position. There was another case in which charges were brought against him with respect to the middle daughter, Jessica, and he was acquitted of those charges and found not guilty by the New Hampshire State unfair prejudice, especially with respect to Jenny G's testimony. This was essentially brought into the courthouse. A transcript was provided to the jury. The transcript was the evidence and the jury was provided the transcript and an audio recording was played of the actual direct examination and answers and cross-examination and answers. We did not see Jenny. Jenny, unfortunately, had passed away earlier before the trial. So you have a situation where the jury is able to listen to a There was cross-examination. I would suggest it was very limited. And they were able to take that, knowing that this was T.G.'s older daughter, that idea and the court also admitted the conviction of Mr. Garnett with respect to Jenny G. So that would have led, I would suggest, to the undue ability of the juries to say, okay, it lets the jury off the hook to some extent. Because it lets them in their mind say, look, he's already been convicted with respect to his older daughter. So if we get this one wrong, it's not that big a deal because we already know that he had done that with respect to his older daughter. So that is an extreme prejudice that we have to deal with. Not to mention the fact that, with respect to unfair and the unfair nature of it, is that we were not able to cross-examine Jenny G. in time. It was this sort of sanitized rendition of what had happened in that testimony. I would suggest to you that in open court, typically you would find the witness would come before the present court. I would have been able to cross-examine that witness in time. And that would have been a much I would suggest a lot more effective defense as opposed to having to rely on what is already... But that's not relevant to the 403 inquiry, is it? Well, I'm suggesting it is. Because I'm suggesting that just that the way that it came into evidence prejudiced the defendant. The sanitized... So are you saying that if the audio had been excluded and just the transcript, that you would have a different position today? I think either the audio just coming in, frankly, or the transcript just coming in are different than if the witness had actually been in the courtroom and the jury could have seen her demeanor and could have witnessed how she reacted to these questions. There's so much about determining credibility of a witness that has to do with how they look and how they appear on the stand as far as any juror determining credibility or not. That's pretty speculative because the appearance of the witness could be devastating for the defendant too, depending on how credible she seemed. So if it hinges on some unknowable guess as to whether it was more credible or less credible by virtue of it coming in in the form that it came in, that seems hard to weigh that particularly, given how probative it is. And I'm suggesting that that is one element of the unfair prejudice. In addition to what I would suggest is the biggest crux of the prejudice, which is the jury hearing of the older daughter and, in addition, hearing the older daughter in addition to having that conviction and being let off the hook, so to speak, as far as the testimony of T.G., who was the subject of the charges. Mr. Sear, before you step back, would you take a minute and summarize your argument on the obstruction enhancement? The difficulty that I'm having with the argument flows from the point that you made when you first stood up, which is that you see this as an intent crime, the interstate travel portion, as opposed to molestation. And yet the government attempted to prove molestation, and your client took the stand and denied molestation. I don't see so if the argument is that the district court did not find willful obstruction, yet that seems to me that that should go to the intent to travel with the expectation that this is what was going to take place. And yet the denial is to, as you've crafted the argument, the denial is with respect to the specific factual charge of molestation. So it's not just a I'm denying the allegations in the indictment, as you have set them forth, and so the jury verdict can't constitute proof of willfulness, but rather it is a denial of specific facts that the government tried to prove. That's how I see this playing out in trying to treat your two separate arguments coherently. So could you just summarize your argument for us? I can do my best, Judge. And again, given the case law that I've seen, it's a difficult argument to make here. But at the same time, Mr. Gaudette took the stand, testified specifically with respect to his intent as far as why he had gone there. He had gone there because his ex-wife had asked him to come and take the kids for a summer vacation, and then the second time she asked him to come and take the kids to the Great Wolf Lodge. And he testified to that, and that was specifically with respect to his intent. With respect to the obstruction of justice and him testifying with respect to the child molestation of the assault, Mr. Gaudette, he believes, he testified truthfully, and he believes that to this day, and he believed that then. And so from his perspective, an obstruction of justice when he's testifying truthfully, that's inappropriate. Not to mention the fact that it really does hamper a defendant's ability to take the stand. He has a right to take the stand or not take the stand. And when he has this threat of having a two-point enhancement for when he does take the stand, it limits his ability to be able to present his defense. That's the best I can do, Judge. Okay. Thank you. Thank you. Good morning again. I'm Marnie Bunker on behalf of the United States. May it please the Court. I'm going to, I will touch briefly on the argument that I haven't seen below in the district court, Mr. Shearer's first argument that because it wasn't an explicit charge of sexual abuse, Rules 413 and 414 aren't in play. That's, I don't think it was right below, but if you look at Jones and Sweeney, that's just not the case. Sweeney was a child porn case, and prior evidence that he had abused boys came in under... How do you read the text to support your position? I just don't see, the text just doesn't seem to contemplate. He's not accused of the thing 413 and 414 talk about, and I think there's an attempt and conspiracy portion to the definition of the offenses that fall within its ambit, but that's not, he's not accused of that either. And the case law, I mean, he's accused in the course of the case overall. TJ has accused him. Is that what accused means? I believe it does. If you look at Sweeney as well, I understand the textual argument, but Jones, I'm sorry, was the other one, which was a transporting with intent to engage in sexual activity with a minor, and it's the same analysis under 413 and 414. So these are the cases we're analyzing, and the charge in the actual indictment doesn't need to be. Was there an attempt or conspiracy charge in that case? I don't know exactly, Your Honor. Because it isn't here. No, there isn't. But you don't have any way of reconciling the text with your position. I don't, except for the case law. I haven't seen quite that issue, and I've heard it for the first time today. But I'd like to, did I answer your question? No. Let me start briefly with the intent, because I think it goes to Chief Judge Howard's linking of the defense here. Actions speak louder than words often, and the only way we could discern the defendant's intent here was to look at what he did. And so we've directed the court below and here to consider what TJ testified about the years of abuse when she was 6 or 7 years old in Stoneham, Mass. She said, in the shower, too many times to count. In his bedroom in Stoneham, too many times to count. He moved it to her bedroom once Jennifer, her mother, moved in. It was the same thing. Then you look at what he did when he brought her to Maine from Pennsylvania, and it wasn't some casual brushing up against her body. He purposefully carried her into his bedroom, and the jury could infer stripped her naked, and himself, and proceeded to touch her vagina. So then look at what happened during the next trip. The jury could reasonably infer that having sexually molested TJ too many times to count, that he intended when he brought her to Maine to continue that sexual activity, and that when he drove to Pennsylvania to take her to the Great Wolf Lodge, he continued and was counting on continuing that sexual activity when he purposefully insisted, TJ testified, that with the boys there, too, she's sleeping with me, he said, before he proceeded to, again, touch her on her vagina. So couple that with the Jennie evidence, which I think Judge Thompson, you mentioned, and the district court, we submit appropriately, a timely exercise of discussion to admit was highly probative because Jennie had testified in that state trial that Ms. Bunker, I don't want to speak for Chief Justice Howard, but I thought his question was a little bit different, which went to the obstruction enhancement. Right. In other words, the court found that he engaged in this molestation conduct, which is different from the charge of transportation with intent, and was it appropriate based on the testimony for the I think that's what Judge Howard was asking. Was it appropriate to give that enhancement? Yes, because of the link, because what Goddard did to TJ over the years went directly to proving his intent. That's essentially how he proved it, because he didn't obviously admit his intention. So what he did went specifically to a material element of his intent, and that was our case. As opposed to spontaneously molesting her, not having had the intent when he started to travel. No, I think Ellis is a very helpful case on that point, Judge Thompson. In Ellis, the defendant's charged with transporting ED a minor to Florida a couple times. Mom testified that the first Florida trip was a family vacation, and the ED minor testified about the abuse before and during that trip. Second trip to Florida, Mom testified, was another family trip. They were going to open a business there, maybe move there. ED testified about the abuse, and the court found, this court in Ellis, that even if provided that regardless of what the family's purpose might have been, the jury was entitled to look at the defendant's private motive upon crossing state lines, and he might have had dual motives. The government didn't need to show an exclusive motive was to continue the sexual activity with TJ. It had to show that a motive was to continue the sexual activity with TJ. And as in Ellis, whether his additional motive was to take the kids to whale watching in Maine or a water park in Pennsylvania, we submit there was ample evidence, based on all that he had done before and after, and what he did during each trip, that the jury could conclude that one of the motivating purposes, one of his intentions in crossing those state lines was to continually sexually assault TJ. And that's Ellis, and I think Raymond is a good case on that point. Going to the Court 13 evidence, the district court, again, we submit the Jenny evidence was clearly evidence of any other sexual assault and properly admitted under 413 and 414. And the district court did not engage in any sort of happenstance or knee-jerking thing. The judge insisted on personally reviewing the evidence. The government submitted it. It's a transcript. The audio is switched than what I think I'm used to generally. Here, the transcript was the evidence. The audio was not. It's just an aid to the jury. And the conviction documents, the court reviewed those personally, and only after careful consideration of that evidence and the party's arguments did the court rule that it was admissible. And that was because we submitted this highly relevant to the only and the crucial issue at trial, which was Goddard's state of mind when he was crossing state lines. And the court also conducted the 403 balancing. When we were talking to your opponent counsel, if 413 and 414 didn't apply, I'm just trying to get a sense of how these cases work, the question then would be whether 404 covers it. Correct. And could you just help me understand how to, would 404 apply here anyway? Yes, I think Sabian is a good example. I think the analysis was under 404B instead of 413 or 414. And there the court held that the defendant had a long-lasting sexual relationship with their daughter and he was providing her with prescriptions and other things. There the court affirmed the district court's exercise of its discretion in admitting the long sexual relationship with his daughter and conducted rules. I mean, it's a pretty, I know this court gives great reference to the district court's 403 balancing test. I'm just wondering whether for 404 purposes it matters if the charge, I'm trying to figure out what, the charge here is intent to transport and the evidence here is obviously of the sexual molestation as opposed to transporting. That's correct because that's often the only means by which we can prove intent is by looking at what the defendant did surrounding commission of the crime. What he did before, repeatedly abused T.G. for years, and what he did during, sometimes what he did afterwards. If you want to look at the Pennsylvania trip. So the best evidence of intent is what he did, which goes to why when he denied four times during his trial testimony that he must have done it. That I get, but I'm just trying to figure out how that works with 404, how it would work. In other words, Yes, I'm not understanding. Well, propensity is not enough, so it's got to be modus operandi. But modus operandi of what? Of what offense? The offense is not the contact. The offense is the intent to transport. So why is the prior evidence evidence of an intent to transport? Do you follow? I think I do. I don't know that 404B is even, I mean sometimes you're looking at a prior conviction for something that's similar but not exact to what was charged. So I think that might come into play as in perhaps Sabian. I haven't completely re-read Sabian before today's argument. The analysis under 403, even with 413 and 414, it's a little more nuanced because courts have to do that with the awareness that Congress has made a judgment statement in 413 and 414 that the propensity bar is proper. But even under 404B, I think that the analysis is similar. The district court would have had deference to weigh both the conduct as well as the actual charge of the prior acts, the prior bad acts. Did that answer your question? Maybe not. Well, within. With that, I guess I can just briefly touch, if the court has further questions, I can touch on the obstruction issue. Well, I'd like to hear more about the 403 balancing though. It may have been highly probative, but it was just killer evidence and you don't have the witness there for cross-examination. Does that change the calculus at all? Again, our first position would be that it was probably made under 413 and 414. Okay, but assume that. Correct. Because I'm not actually sure where the propensity that we're talking about is with respect to intent, which is a typical 404B anyway, right? So to me, I'm not sure that that actually matters, but assume we're talking about a 404B admission. The evidence whether we're talking about 404B or 413 was prejudicial. And again, I keep going back to Sabian because I seem to recall the court there saying, oh, yes, this is very prejudicial. And it had the potential risk of inflaming the jury. That said, Sabian's state of mind, like Mr. Gaudet's state of mind, was pretty much the only issue at trial, so very highly probative. And the court, I would point out, also gave two limiting instructions here to soften the blow a bit. When the evidence came in, the court issued a limiting instruction and in its final jury instructions, the court further instructed on the limited use of the Jenny evidence. And it did go to modus operandi, which is one of the 404B motive-opportunity intent. I think modus operandi is in there. Where what he did to Jenny, according to Jenny's testimony, was he drove her from Maine to New Hampshire to his house. When she fell asleep on the couch, clothed, the next thing she knew, she woke up in his bedroom naked, with him naked, rubbing her vagina and his penis against her leg. Look at what T.G. testified to. And in Maine, when she fell asleep on the couch, and she woke up in Mr. Gaudet's bedroom, naked, with him naked, and him touching her vagina. So it also did go to modus operandi in quite a compelling way and therefore was not only probative of intent, but also probative of T.G.'s corroborating, relevant to corroborating T.G.'s testimony, which Mr. Gaudet tried to shut down and knock down at every step of the way. So clearly prejudicial, as all evidence is. And it's the nature, it's the type of evidence, as Congress indicated in an act in 413 and 414, that can be prejudicial. But I think the limiting instructions held in the facts of this case supported the district court's sound exercise of its discretion in doing that balancing act. If the court has no further questions, we'll ask that you affirm. Thank you. With respect to the Jones case, I had referred to that and cited that in our reply to the government. We both filed motions eliminating. There was then an opportunity for me to reply to that, which we did. And in the Jones case, Jones had been charged with a number in a footnote 3 on page 3, or page 66 of the appendix, volume 1, had been charged with a number of offenses that the 414, I think Rule 414 or Rule 413, specifically said, look, if you're charged with these particular offenses, then this rule applies. So in Jones, he had been charged with a few of those offenses. So frankly, and I indicated in that reply brief, and I would suggest today that I'm not sure that the court has actually looked at that particular issue. And Jones is not dispositive of that issue because it's clouded by the fact that he'd been charged with other things that did bring into play those 413 or 414. With respect to, again, the prejudicial nature of this, which is really the crux of Mr. Gaudet's argument, in that courtroom on that day when the jury, we had gone through the testimony of T.G. Her testimony was, frankly, very inconsistent. The disclosure that happened was very, it raised a lot of red flags. In other words, her 6th grade teacher, when asked her how you're doing, she said she was feeling kind of low one day. She said that her mom had told her that her older sisters had been molested, and she may have been molested too. And when the teacher specifically asked her, well, do you remember any of this abuse? And T.G. says no. And this is to her 6th grade teacher. And then on the stand later, she says, and now as a 16-year-old on the stand, said, well, I lied to my teacher. So the disclosure was very much something that was raising some red flags. There were some significant inconsistencies, in particular something that was developed at the trial level and cross-examination. T.G. only testified under oath with respect to two things. One time when she was in Pennsylvania at the Great Wolf Lodge, Mr. Gardak touched her. And then one time when she was in Maine, he touched her. Mr. C., I'm trying to follow your argument here. Yes. So there were inconsistencies that the jury resolved. Are you saying that because of the inconsistencies, that the court therefore abused its discretion in admitting the evidence that strengthened government's position that this took place? What I am suggesting is the fact that there were these inconsistencies, and then when you have a case such as that, in and of itself, that's one particular case, and then when you put on the record, the transcript and that audio recording of a trial that had taken place years before of an older sister, that that immense presidential effect should be taken and weighed a little more significantly, is my argument. Thank you. Before you step back, 413 and 414 speak in terms of where one is accused. So 413 is accused of a sexual assault, for example. It doesn't say charge, but it doesn't say where one of the facts in the issue might be whether the sexual assault was actually committed. It doesn't go on either end. It just uses the word accused. So if you have a speaking indictment that charges travel with intent crime, like this one, for example, but the speaking indictment goes further and actually makes the factual accusation that there was a completed assault or an attempted assault, even though the statute doesn't require it and the rule doesn't necessarily speak to those facts, have you seen any cases that might suggest one way or the other what the word accused in the rule means, whether it means strictly the charge or whether it's more a reference to the indictment and the language used in the indictment? I have not seen these cases, Judge. Thank you. Thank you both.